IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Case No. 4:13cv634 |
| § | |
| INFOSYS LIMITED § | |

# COMPLAINT

Nature of Action

1. This is a civil action to recover damages knowingly caused by the defendant, **Infosys Limited** ("**Infosys**"), through its systemic visa fraud and abuse of immigration processes.

Jurisdiction and Venue

2. The Court has jurisdiction and venue over this action pursuant to 31 U.S.C. § 3732 and 28 U.S.C. § 1345, because this action was brought by the United States and acts underlying this complaint occurred in the Eastern District of Texas.

Parties

3. The United States of America is the plaintiff; **Infosys** is the defendant.

General Allegations

4. **Infosys** is a corporation involved in consulting, technology, and outsourcing, located in thirty countries including the United States, and in seventeen cities in the United States, including a location at 6100 Tennyson Parkway, Suite 200, in Plano, Texas, in the Eastern District of Texas. The Plano location is responsible for handling the immigration practices and procedures for the United States operations of **Infosys**.

5. **Infosys** brings foreign nationals into the United States in order to perform work and fulfill contracts with its customers under two visa classification programs relevant to this matter, H-1B and B-1:

> A. The H-1B visa is a non-immigrant visa that allows an employer to temporarily employ a foreign national in a "specialty occupation." A specialty occupation is one that requires a theoretical and practical application of a body of specialized knowledge and attainment of a bachelor's or higher degree or its equivalent in experience for the specific specialty. The application process is highly regulated and requires the submission of a Labor Condition Application that describes the intended occupation and specific geographical place of employment and certifies that the salary of the proposed employee is commensurate with similarly employed United States workers, that the working conditions of the proposed employees will not adversely affect the conditions of workers similarly employed, and that there is not a strike, lockout, or work stoppage at the company. The annual cap for new H-1B visa issuances is 65,000. The base fee for an H-1B application is $325 with an additional $500 Fraud Prevention and Detection fee. Additional fees can include $1500 for the American Competitiveness and Workforce Improvement Act fee to fund the training of United States citizens and $2000 for an application by companies with more than 50 employees in the United States of which more than 50 percent are in H-1B or L-1 status.
>
> B. The B-1 visa is a non-immigrant visa that allows a foreign national to temporarily enter the United States for business purposes. Business purposes entail activities such as consulting with business associates; traveling for business conventions; negotiating a contract; participating in short-term training; and other activities of a temporary nature incident to international trade or commerce. It does not include local employment or labor for hire. Pursuant to law and regulations, B-1 visa holders may not perform skilled or unskilled labor. B-1 visas are valid for ten years, and the application fee for a B-1 visa is approximately $160.

6. In connection with arranging travel for B-1 visa holders, **Infosys** generates or causes to be generated "invitation letters" stating that certain **Infosys** employees will travel to the United States in order to handle aspects of contracted business or other business activities. These "invitation letters" are often submitted to and reviewed by U.S. Consular Officials and other

immigration officials, who expect that the information contained in the letters is a complete and accurate representation of the purpose of the trip, in support of the B-1 visa holder's travel into the United States.

7. To circumvent the requirements, limitations, and governmental oversight of the H-1B visa program, **Infosys** committed visa fraud by knowingly and unlawfully using B-1 visa holders to perform skilled labor in order to fill positions in the United States for employment that would otherwise be performed by United States citizens or require legitimate H-1B visa holders, for the purposes of increasing profits, minimizing costs of securing visas, increasing flexibility of employee movement, obtaining an unfair advantage over competitors, and avoiding tax liabilities.

8. Infosys also failed to monitor the status of foreign nationals that they had sponsored for travel and placement in the United States by failing to maintain accurate I-9 forms and records for each foreign national as required by law.

9. Specifically, **Infosys** took, among others, the following actions in furtherance of its unlawful scheme:

    A. As a matter of practice, **Infosys** submitted "invitation letters" to U.S. Consular Officials that contained materially false representations regarding the true purpose of a B-1 visa holder's travel in order to deceive U.S. Consular Officials and/or Customs and Border Protection Officers and secure entry of the visa holder into the United States. These "invitation letters" often stated that the purpose of travel was for "meetings" or "discussions" when the true purpose was to engage in activities not authorized under a B-1 visa. Examples from such invitation letters submitted to U.S. Consular Officials in order to mislead the officials are as follows:

        (1) An invitation letter submitted on or about July 3, 2008, relating to an individual known as MG, stated that the purpose of the trip was for "customer discussions and related business development activities," when, in fact, as known by Infosys, the purpose of the trip was to

        engage in activities not authorized under a B-1 visa, which included, but was not limited to, coding and programming.

    (2)    An invitation letter submitted on or about July 15, 2009, relating to an individual known as SI, stated that the purpose of the trip was for "customer discussions and related business development activities," when, in fact, as known by Infosys, the purpose of the trip was to engage in activities not authorized under a B-1 visa, which included, but was not limited to, coding and programming.

    (3)    An invitation letter submitted on or about May 5, 2010, relating to an individual known as AR, stated that the individual "would be involved in meetings and business discussions," when, in fact, as known by Infosys, the purpose of the trip was to engage in activities not authorized under a B-1 visa, which included, but was not limited to, coding and programming.

    (4)    An invitation letter submitted on or about March 9, 2011, relating to an individual known as AS, stated that "the purpose of the trip was for meetings and discussions," when, in fact, as known by Infosys, the purpose of the trip was to engage in activities not authorized under a B-1 visa, which included, but was not limited to, coding and programming.

B.    **Infosys** provided instructions to B-1 visa holders regarding how to deceive U.S. Consular Officials and/or Customs and Border Protection Officers, including specific direction regarding the avoidance of certain terminology, the avoidance of contract terms, and the use of misleading job titles, in order to secure entry of the visa holder into the United States. Examples from a "Do's and Don'ts" memorandum provided by **Infosys** to foreign nationals entering the United States on a B-1 visa included the following directions:

    (1)    "Do not mention activities like implementation, design & testing, consulting, etc., which sound like work."

    (2)    "Also do not use words like, [sic] work, activity, etc., in the invitation letter."

    (3)    "Please do not mention anything about contract rates."

C.    **Infosys** directed foreign nationals to inform U.S. Consular Officials and/or Customs and Border Protection Officers that their destination in the United States was the same as that provided in the Labor Condition Application; however, **Infosys** and the foreign nationals knew that the foreign nationals

        had been assigned to other destinations in the United States. This was done in order to secure entry of the visa holder into the United States without requiring the submission of an additional Labor Condition Application and to avoid additional scrutiny by U.S. officials. Examples of such false representations are as follows:

        (1)    On or about November 26, 2008, **Infosys** directed an individual known as ST to tell U.S. Consular Officials that he was destined for Seattle, Washington, consistent with the Labor Condition Application; however, his true destination was Henrico, Virginia.

        (2)    On or about October 28, 2009, **Infosys** directed an individual known as VG to tell U.S. Consular Officials that he was destined for Seattle, Washington, consistent with the Labor Condition Application; however, his true destination was Bentonville, Arkansas.

        (3)    On or about October 29, 2010, **Infosys** directed an individual known as SK to tell U.S. Consular Officials that he was destined for Beaverton, Oregon, consistent with the Labor Condition Application; however, his true destination was Sunnyvale, California.

        (4)    On or about November 3, 2011, **Infosys** directed an individual known as BS to tell U.S. Consular Officials that he was destined for Houston, Texas, consistent with the Labor Condition Application; however, his true destination was Milwaukee, Wisconsin.

D.    In some circumstances, **Infosys** wrote and revised contracts with clients in order to conceal the fact that Infosys was providing B-1 visa holders to perform jobs that involved skilled or unskilled labor that were otherwise required to be performed by United States citizens or require legitimate H-1B visa holders. For example, on or about September 29, 2009, in a series of emails between **Infosys** employees, **Infosys** directed its employees to convert a "time and materials contract" – a contract that disclosed the names and billing rates of all individuals working on a project – to a "fixed price contract" – a contract that disclosed only the total price for services performed. This change allowed and was intended by **Infosys** to conceal the fact that B-1 visa holders were performing jobs that involved skilled or unskilled labor that were otherwise required to be performed by United States citizens or required legitimate H-1B visa holders.

E.    In other circumstances, **Infosys** concealed the fact that B-1 visa holders were performing jobs that involved skilled or unskilled labor that were

        otherwise required to be performed by United States citizens or required legitimate H-1B visa holders by billing clients for the use of off-shore resources when, in fact, work was being performed by B-1 visa holders in the United States. For example, on or about December 31, 2011, Infosys employees convinced client managers to accept billing invoices which accounted for approximately 2.5 resources listed as off-shore employees using the lower off-shore rate, when in reality Infosys used a single B-1 visa holder in the U.S. This billing change allowed and was intended by Infosys to conceal the fact that B-1 visa holders were performing jobs that involved skilled or unskilled labor that were otherwise required to be performed by United States citizens or required legitimate H-1B visa holders for which Infosys would bill the higher on-shore rate.

F.    **Infosys** used B-1 visa holders to perform jobs that involved skilled labor that were instead required to be performed by United States citizens or required legitimate H-1B visa holders.

G.    **Infosys** failed to maintain I-9 records for many of its foreign nationals in the United States in 2010 and 2011 as required by law, including a widespread failure to update and re-verify the employment authorization status of a large percentage of its foreign national employees. These omissions extended to the following: failing to complete required forms, filling out such forms incompletely, failing to properly maintain identification records, and failing to monitor immigration statuses. This failure to re-verify the work authorization status of its employees who were in the United States on temporary visas created an environment where thousands of employees could be allowed to continue working in the United States past the duration of their work authorization.

Claims for Relief

*First Cause of Action*

10.    The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

11.    The United States further states that **Infosys** knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. § 3729(a)(1)(A), as set forth in paragraph 9(A), above.

*Second Cause of Action*

12. The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

13. The United States further states that **Infosys** knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. § 3729(a)(1)(A), as set forth in paragraph 9(B), above.

*Third Cause of Action*

14. The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

15. The United States further states that **Infosys** knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. § 3729(a)(1)(A), as set forth in paragraph 9(C), above.

*Fourth Cause of Action*

16. The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

17. The United States further states that **Infosys** knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. § 3729(a)(1)(A), as set forth in paragraph 9(D) and (E), above.

*Fifth Cause of Action*

18. The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

19. The United States further states that **Infosys** knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, a violation of 31 U.S.C. § 3729(a)(1)(A), as set forth in paragraph 9(F), above.

*Sixth Cause of Action*

20. The United States realleges and incorporates by reference paragraphs four through nine of this complaint.

21. The United States further states that **Infosys** unlawfully hired individuals for employment in the United States without complying with certain requirements, namely that **Infosys** failed to attest, under penalty of perjury, that it updated and re-verified that employees on temporary visas continued to be authorized to work after the expiration of their initial work authorization, that **Infosys** failed to verify that the individuals were not unauthorized aliens by examining certain identification documents, that **Infosys** did not review documents establishing both the employment authorization and the identity of the individuals designated for employment in the United States, and that **Infosys** failed to verify that the individuals' attestations of employment authorization occurred under penalty of perjury, a violation of 8 U.S.C. § 1324a(a)(1)(B), as set forth in paragraph 9(G), above.

Prayer for Relief

22. Based on the foregoing, the United States seeks the following relief:

   A. For violations of 31 U.S.C. § 3729(a)(1)(A):

   (1) Civil penalties of not less than $5,500 and not more than $11,000 for each false claim that the Court determines **Infosys** submitted to the United States;

   (2) Three times the amount of damages that the Government sustained because of **Infosys's** conduct;

  (3) A preliminary and permanent injunction requiring **Infosys** to cease use of "invitation letters" that conceal the true nature of a foreign national's visit to the United States;

  (4) A preliminary and permanent injunction requiring **Infosys** to disclose the true destination of a foreign national who enters the United States;

  (5) Costs and expenses of litigation; and

  (6) Any other relief as the Court deems proper.

23. For violations of 8 U.S.C. § 1324a(a)(1)(B):

  (1) Civil penalties in an amount of not less than $110 and not more than $1,100 for each individual with respect to whom such violation occurred, with consideration afforded by the Court to Infosys's size and the seriousness of the offense;

  (2) A preliminary and permanent injunction requiring **Infosys** to comply with proper I-9 recordkeeping;

  (3) Costs and expenses of litigation; and

  (4) Any other relief as the Court deems proper.

Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY


_____
Shamoil T. Shipchandler
Assistant United States Attorney
Texas Bar No. 24028533
101 East Park Boulevard, Suite 500
Plano, TX 75074
tel: (972) 509-1201
fax: (972) 509-1209
email: shamoil.shipchandler@usdoj.gov